Troy Law, PLLC
*Attorneys for Plaintiffs and Potential Rule 23 Class*
John Troy (JT 0481)
41-25 Kissena Boulevard, Suite 119
Flushing, NY 11355
Tel: (718) 762-1324
johntroy@troypllc.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
JIONG LIN,
*on behalf of himself and others similarly situated,*
                                    Plaintiffs,

                       v.

AMWAY CORP.
    a/k/a Quixtar Inc.
    d/b/a Amway Global,
                               Defendant.
-------------------------------------------------------------------x

**Case No: 17-cv-3882**

**FED. R. CIV. P. 23 CLASS ACTION**

**COMPLAINT**

       Plaintiff JIONG LIN (hereinafter referred to as "Lin" or "Plaintiff"), on behalf of himself and others similarly situated, by and through his attorneys, Troy Law, PLLC, hereby brings this complaint against Defendant AMWAY CORP. a/k/a Quixtar Inc. d/b/a Amway Global (hereinafter referred to as "Amway" or "Defendant").

## INTRODUCTION

1.     This action is brought by Plaintiff, on behalf of himself as well as others similarly situated, *inter alia*, pursuant to 28 U.S.C. § 2201 *et seq.* for a Declaratory Judgment of their rights as litigants, as well pursuant to 42 U.S.C. § 1981 *et seq.*, otherwise known as the Civil Rights Act of 1866, against Defendant, to redress the failure by Defendant to pay Plaintiff and others similarly situated their contractually agreed-upon bonuses ("Bonus"), based on what Plaintiff alleges to be the illegal, discriminatory withholding of Bonus not only from him but, based on their national origin, similarly situated Amway distributors of Chinese extraction.

2. Plaintiff brings this action for a Declaratory Judgment, *inter alia*, to declare that the agreement between Plaintiff and Defendant, and those same agreements between those similarly situated to Plaintiff and Defendant, is void, or voidable in part, as it mandates submitting disputes to an alternative dispute resolution ("ADR") process which is both procedurally and substantively unconscionable.

3. Without this Court's intervention, Plaintiff's only means of redress to recover his Bonus would be to submit to the Defendant's ADR procedures and thereby risk being forever precluded from any remedy by the Court with respect to contractual disputes.

## JURISDICTION AND VENUE

4. This Court has original federal question jurisdiction over this controversy under 28 U.S.C. § 1331 because the declaratory judgment claim and the discrimination claim herein both arise in whole or in part under the laws of the United States.

5. This Court has supplemental jurisdiction over claims arising under state law pursuant to 28 U.S.C. § 1367, *inter alia*, because those claims are so related to the claims within the Court's original jurisdiction that they form part of the same case and controversy.

6. Alternatively, even without federal question jurisdiction, this Court would have jurisdiction over this matter, pursuant to 28 U.S.C. § 1332, in that complete diversity exists between the parties, and most assuredly the money damages claimed herein by Plaintiff exceeds seventy-five thousand dollars ($75,000.00).

7. Alternatively, this Court has jurisdiction over the subject matter presented by this complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), which explicitly provides for the original jurisdiction of the Federal courts over any class action where any member of the plaintiff class is a citizen of a state different from any defendant, and when the matter in controversy exceeds in

the aggregate the sum of five million dollars ($5,000,000.00), exclusive of interests and costs.

8. Plaintiff alleges that the total claims of the individual members of the Class in this action are in excess of five million dollars ($5,000,000.00), exclusive of interests and costs, as required by 20 U.S.C. § 1332(d)(2), (5).

9. Certification of the above class under Rule 23(b)(2) of the Federal Rules of Civil Procedure will enable final declaratory and injunctive relief appropriate with respect to the class as a whole, because Defendant, upon information and belief, has acted on grounds generally applicable to that class.

10. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391, in that Defendant, conducts business in Queens County through contractual agreements with distributors of Defendant's products, including Plaintiff.

11. Plaintiff brings this action on behalf of himself and on behalf of a class, more fully defined below, consisting of Chinese distributors who have been deprived of their Bonuses by Defendant.

## THE PARTIES

12. Plaintiff JIONG LIN is a resident of Queens County, New York.

13. Defendant AMWAY CORP. a/k/a Quixtar Inc. d/b/a Amway Global is, upon information and belief, a Virginia corporation headquartered in, and a resident of, the state of Michigan, maintaining its corporate headquarters in the greater Grand Rapids metropolitan area. Quixtar became the successor in interest to Amway and, upon information and belief, changed the corporate name to Amway Global but, further upon information and belief, Quixtar is wholly owned by Alticor, Inc., a holding company which now serves as parent to Amway.

14. Amway, *inter alia*, the contracting Defendant herein, is a multilevel marketing company which produces and markets a variety of household products, including by way of example and

not limitation, home cleaning products which it sells to consumers through a network of distributors known as "Independent Business Owners" or "IBOs."

15. IBOs, in turn, are given the right by Amway to sponsor other distributors. A sponsoring IBO is commonly (and hereinafter) known as an "Up-Liner," and a sponsored IBO is commonly (and are hereinafter) referred to as a "Down Liner." An IBO may, therefore, be an "Up-Liner" and a "Down-Liner."

16. JIONG LIN owns and manages an IBO, Anny Lin, Inc.

17. JIONG LIN has no connection to the state of Michigan other than his attenuated relationship with Amway as a citizen of Michigan.

## STATEMENT OF FACTS

*Registration Agreement*

18. As a general rule, IBOs enter into a contract with Amway that includes, *inter alia*, all of the terms in the IBO Registration Agreement ("Registration" or "Agreement") and the Amway Rules of Conduct ("Rules of Conduct").

19. The Registration is available in print in English, Spanish, Chinese, and perhaps other languages, but if signed online by an IBO, is only available in English.

20. While the Rules of Conduct also are published online they are only carried in English and Spanish; a Chinese version is not provided online.

21. On or around October 2013, JIONG LIN executed a Registration Agreement with Amway online—in other words, in English—with no Chinese version available.

22. JIONG LIN was only given a Chinese copy of the Amway Rules of Conduct once several years had passed since he signed the Registration Agreement.

23. In 2013, JIONG LIN hardly was conversant in English, and did not understand the terms and conditions of the Registration Agreement or the Rules of Conduct.

24. JIONG LIN was instructed as to how to fill out his IBO Registration Agreement by his sponsoring Up-Liner, Yue Zheng.

25. Yue Zheng's instructions consisted of telling JIONG LIN what boxes to click and where to put his name in order to agree to the terms of the online Registration Agreement, and did not consist of telling JIONG LIN what those terms were.

26. In addition, JIONG LIN had never entered into a contractual relationship before, nor had he ever been engaged in a business relationship of any kind, and did not, nor could he, participate in the negotiation of the Rules of Conduct.

27. Prior to becoming an Amway IBO, JIONG LIN had been a manual factory worker in China and a miscellaneous Chinese restaurant kitchen worker in the United States.

28. JIONG LIN possessed absolutely no bargaining position vis-à-vis the Defendant with respect to the Rules of Conduct or otherwise.

29. The Registrations are presented in a "take it or leave it" manner.

*ADR Process*

30. Rule 11 of the Amway Rules of Conduct require, *inter alia*, a series of steps as a precursor to the ultimate resolution of a dispute.

31. Essentially, these are as follows: first, "reciprocal" conciliation, which is a nonbinding mediation ("Mediation") at which Amway's IBOAI (the "IBO Board of Directors") selects and provides the mediator ("Mediator"). All parties are obligated to participate at this informal stage.

32. The IBO Board is comprised of Amway's very top producers, who are the most highly compensated by Amway.

33. The second or next step is more formal Mediation before a Hearing Panel.

34. If the informal Mediation fails, or the parties do not agree with the Mediator's

recommendation, the aggrieved party may then request the Hearing Panel process.

35. The Hearing Panel Chairperson, however, also is exclusively selected by the IBOAI Board, along with the Board's selection of three additional Panel members, and alternates.

36. As such, a claimant like JIONG LIN has no choice as to who serves on the Hearing Panel, or the three members or the alternates, just as he would have no choice as to the selection of the Mediator in the first step of the conciliation process.

37. Should a voluntary resolution not occur at the Hearing Panel stage either party shall be entitled to submit the dispute to binding arbitration, governed by the Federal Arbitration Act (the "Act").

38. The Rules of Conduct require the IBO to waive any class action, and precludes a Plaintiff from participating in any claim asserted as a class action.

*Failure to Pay Bonus*

39. Bonuses are determined based on how many Down-Liners and sales an IBO has.

40. New IBOs with no or few Down-Liners, earn a three thousand dollar ($3,000.00) Bonus every three (3) months, a one thousand five hundred dollar ($1,500.00) Bonus every six (6) months, and each year an approximately twenty-thousand dollar ($20,000.00) Bonus if their sales exceed two hundred thousand dollars ($200,000.00).

41. IBOs with as many Down-Liners and sales as JIONG LIN earn no three-month Bonus, a greater than forty thousand dollar ($40,000.00) Bonus every six (6) months, and a two hundred thousand dollars ($200,000.00) bonus each year their sales exceed one million dollars ($1,000.000.00).

42. JIONG LIN earned his yearly bonus of two hundred thousand dollars ($200,000.00) each year from 2013 to 2015.

43. On or about April 2016, JIONG LIN was informed that his six-month Bonuses had been suspended pending the results of an investigation into IBO sales practices that got them over the quota to receive bonuses.

44. Upon information and belief, the said investigation exclusively targeted Chinese IBOs.

45. On or about October 29, 2016, JIONG LIN initiated the ADR process by requesting conciliation.

46. The said conciliation was held, with JIONG LIN participating by telephone, in November 2016.

47. Also in November, 2016, and following the conciliation, JIONG LIN was informed in writing, as were, upon information and belief, dozens of other IBOs and Down-Liners that he was not going to receive his yearly Bonus, which is usually paid in October for the previous year ending in August.

48. Other IBOs and Down-Liners known to Plaintiff to have received notice that they were not going to receive their yearly Bonus include, but are not limited to: Li Yun Ing, a co-owner of Anny Lin, Inc.; Bingxi Zhu; Qiao Gao; Meizhuan Zhu; Zhong Huang; and Yiqian Gong.

49. Upon information and belief, after some inquiry by Plaintiff, he determined that the others who did not receive their Bonus number approximately one hundred (100) in total; all of Chinese extraction.

50. In something of a form letter, Amway notified the Chinese recipients that they had a right to appeal Amway's decision not to pay them their Bonses under the ADR Procedures of Rule 11 of the Amway Rules of Conduct, outlined above.

51. The second step of the Amway ADR process, mediation before a panel chosen by the IBOAI, held at the Amway center at Citi Field, with a Chinese interpreter present, paid for by

Amway. This in-person mediation did not result in settlement.

52. Three weeks after the in-person mediation, JIONG LIN's upliner, Yue Zheng, suggested to JIONG LIN and to Amway that they settle for thirty-five thousand dollars ($35,000.00). Both JIONG LIN and Amway rejected this proposal.

53. JIONG LIN has not initiated the third step of Amway's ADR procedures, binding arbitration.

*Validity of the ADR Provisions*

54. The Defendant's agreements are both procedurally and substantively unconscionable as a matter of law, irrespective of which state law would apply, and therefore unenforceable.

55. As such, Plaintiff should be allowed to pursue his claim for payment of his earned bonus, on behalf of himself and others similarly situated, not pursuant to the required procedures delineated in the Rules of Conduct, rather in this Court pursuant to the substantive law of New York, and allowed to prove that he, and if not the whole then substantially the whole Chinese community of IBOs and Down-Liners, dozens in number, has been discriminated against by Amway on the basis of national origin by unilaterally refusing to pay Bonus.

56. Plaintiff is aware that approximately one hundred (100) IBOs, all of Chinese extraction, also have had their Bonuses withheld along with his and, therefore, compelled to arbitrate.

## CLASS ACTION ALLEGATIONS

57. Plaintiff brings his claims for a declaratory judgment, for breach of contract and unjust enrichment, and for discrimination on the basis of national origin pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 23, on behalf of all IBOs and Down-Liners of Chinese extraction who were denied their Bonuses by Amway in 2016.

58. All said persons, including Plaintiff, are referred to herein as the "Class."

59. The Class members are readily ascertainable. The number and identity of the Class

members are determinable from the records of Defendants. The Bonuses owed, the Bonuses denied, the basis upon which the Bonuses were determined, and the basis upon which the Bonuses were denied are also determinable from Defendants' records. For purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under said Fed. R. Civ. P. 23.

*Numerosity*

60. The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of the number can be based are presently within the sole control of the Defendants, upon information and belief, there are more than one hundred (100) members of the Class.

*Commonality*

61. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

    a. Whether Plaintiff and the Class members were subject to an unconscionable and unenforceable alternative dispute resolution procedure;

    b. Whether Defendant owed Plaintiff and the Class members Bonuses under the terms of their contracts with Amway;

    c. Whether Plaintiff and the Class members were paid the Bonuses to which they were entitled;

    d. Whether Defendant breached its contracts with Plaintiff and the Class members by failing to pay Bonuses;

e. Whether Defendant was unjustly enriched as a consequence of failure to pay Plaintiff and the Class their Bonuses;

f. Whether Defendants maintained a policy, pattern, and/or practice of denying Bonuses on the basis of national origin;

g. Whether Defendants maintained a policy, pattern, and/or practice of denying Bonuses pretextually;

h. At what common rate, or rates subject to a common method of calculation were and are Defendants required to pay the Class members for their work.

*Typicality*

62. Plaintiff's claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate policies of Defendants, as alleged herein, of failing to pay Bonuses. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefitted from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

*Adequacy*

63. Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in representing Plaintiff in class action and breach of contract litigation cases.

*Superiority*

64. A class action is superior to other available methods for the fair and efficient adjudication

of this controversy, particularly in the context of litigation where individual Class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expenses that numerous individual actions engender. Because the losses, injuries, and damages suffered by each of the individual Class members are small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. Further, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common class-wide relief. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

## STATEMENT OF CLAIMS

### COUNT I.
### [For Declaratory Judgment
### Brought on behalf of the Plaintiff and Class]

65.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

66.     Plaintiff and the Class members are entitled to a Declaratory Judgment that the Amway

Registration and Rules of Conduct, particularly the ADR procedures, are both procedurally and substantively unconscionable and therefore they should be entitled to dispute the failure to pay Bonus and to pursue their claims against Defendant in this Court, together with such other and further relief as to this Court seems just and proper.

## COUNT II.
### [Breach of Contract and Unjust Enrichment Brought on behalf of the Plaintiff and the Class]

67. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

68. Defendant has breached its agreements with the Plaintiff and the Class members by failing to pay Plaintiff and the Class members their annual, yearly Bonuses, in an amount to be determined at trial but each on its own assuredly greater than seventy-five thousand dollars ($75,000.00) and together assuredly greater than five million dollars ($5,000,000.00).

69. By doing so, Defendant not only has breached its contractually secured obligation to pay Plaintiff and the Class their annual performance Bonuses, but as a result therefore, Defendant is being unjustly enriched by retaining those Bonus monies due to Plaintiff and others similarly situated for its own use and enjoyment at the expense of each deprived IBO.

70. By reason thereof, Plaintiff and the Class members have been damaged in a like amount and are entitled to have judgment over and against, and to recover against Defendant at least in the amount of their withheld Bonuses, together with reasonable attorney fees and the costs and disbursements of this action.

71. Plaintiff and the Class are entitled to judgment therefore over and against Amway in the amount stated hereinabove.

## COUNT III.
### [Discrimination on the Basis of National Origin
### Brought on behalf of the Plaintiff and the Class]

72. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

73. Plaintiff is aware that in addition to the refusal by Amway to pay his Bonus, Amway also has refused to pay dozens, if not hundreds, of Chinese IBOs and Down-Liners their earned Bonus, totaling somewhere between one hundred (100) and two hundred (200) individuals all of the same national origin.

74. Upon information and belief, the number may be even greater than that above mentioned, but Plaintiff has no appreciable way to determine the identity of all those so deprived until he is able to obtain discovery.

75. Participating in the ADR procedures not only does not guarantee discovery, but precludes any class actions even if discovery unearned a discernable class.

76. From what he has been made aware, the inference drawn by Plaintiff, however, is of a pattern of intentional discrimination and racial animus by Amway which is reasonable under the circumstances given the sheer number of IBOs of Chinese extraction who were denied Bonuses, and constitutes a palpable pattern enough to establish a *prima facie* case of discrimination under 42 U.S.C. § 1981 in that, to Plaintiff's knowledge no IBOs, other than distributors in the greater New York Metropolitan area who are of Chinese or other Asian extraction, have been deprived their Bonuses; all the IBOs not paid their Bonuses of which Plaintiff is aware are Chinese.

77. The combined damages to the Class of Chinese IBOs and Down-Liners who have not been paid their Bonuses on the basis of national origin, upon information and belief, will together amount to millions of dollars.

78. Discrimination on the basis of national origin is actionable under 42 U.S.C. § 1981 *et seq.*

as well as under the laws of New York, and, in the instant matter, Plaintiff's claim, upon discovery, likely will lead to the certification of a class action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on his own behalf, and on the behalf of the Rule 23 Class, respectfully request that this Court enter a judgment providing the following relief:

    a.      Certification of this case as a Class action pursuant to CAFA and Rule 23;

    b.      On the First Cause of Action, declaring that Plaintiff be allowed to pursue his claims on behalf of himself and others similarly situated against Amway in this Court as the Defendant's ADR procedures are procedurally and substantively unconscionable and unenforceable;

    c.      On the Second Cause of Action, granting judgment to Plaintiff and those similarly situated in the amount of their unpaid Bonuses, together with other compensatory damages which flow as a result of Defendant's breach;

    d.      On the Third Cause of Action, granting judgment to Plaintiff and others similarly situated for discrimination suffered on the basis of national origin;

    e.      An injunction against Defendant, its officers, agents, successors, employees, representatives, and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices and policies set forth herein;

    f.      An award of costs and expenses of this action together with reasonable attorneys' fees and expert fees;

    g.      The costs and disbursements of this action;

    h.      An award of prejudgment and post-judgment interest; and

    i.      Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

Dated: June 28, 2017  
       Flushing, NY

TROY LAW, PLLC  
*Attorneys for the Plaintiff, proposed FLSA Collective and potential Rule 23 Class*

/s/ John Troy  
John Troy (JT 0481)  
41-25 Kissena Boulevard, Suite 119  
Flushing, NY 11355  
Tel (718) 762-1324  
johntroy@troypllc.com